FILED 8 AUG '24 14:05USDC-ORP

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

Case 1:24-CV-1301-MC

**David White, Pro Se P1**
18965 NW Illahe St,
**Portland OR.**
dave@salmonprotectiondevice.com
503-608-7611

CLASS ACTION COMPLAINT

COMPLAINT FOR
DECLARATORY JUDGEMENT,
DAMAGES
AND INJUNCTIVE RELIEF

**vs.**

**Defendant 1. (D1)**
**Chairman Willie L. Phillips, in his**
**Personal capacity as chairman of**
**Federal Energy Regulatory Commission (FERC)**
**202-502-8550 Chairman_Phillips_Meetings@ferc.gov**

**Defendant 2. (D2)**
**Commissioner Mark Christie in his**
**Personal capacity as Commissioner of**
**Federal Energy Regulatory Commission (FERC)**
**202-502-8110 Commissioner_Christie_Meetings@FERC.gov**

**Defendant 3 (D3)**
**Commissioner David Rosner in his**
**Personal capacity as Commissioner of**
**Federal Energy Regulatory Commission (FERC)**
**202-502-6500 Commissioner_Rosner_Meetings@FERC.gov**

**Defendant 4 (D4)**
**Commissioner Lindsay S. See in her**
**Personal capacity as Commissioner of**
**Federal Energy Regulatory Commission (FERC)**
**Commissioner_See_Meetings@FERC.gov**

**Defendant 5 (D5)**
**Commissioner Judy W. Chang in her**
**Personal capacity as Commissioner of**
**Federal Energy Regulatory Commission (FERC)**
Commissioner_Chang_Meetings@FERC.gov

**Debbie-Anne A. Reese 6 D6**
**in her personal capacity as**
**Secretary, Federal Energy Regulatory**
**Commission**
**888 First Street, N.E.**
**Washington, D.C. 20426**
**No contact email provided**

Legal Counsel for all defendants
Danielle Mechling
Attorney-Advisor
Federal Energy Regulatory Commission
Office of Enforcement, Division of Investigations
Tel: 202-502-8924
Email: danielle.mechling@ferc.gov

## TABLE OF AUTHORITIES

1)18 USC 3 accessory after the fact…………………………………………17
2) 16 USCA § 1532(19);……………………………………………………3
3) Scott, J. M. & Karl, J. (1999) "Local and national protection of endangered species: An assessment," Environmental Science & Policy, 2, pp. 43-59.
4) 18 U.S. Code § 41 - Hunting, fishing, trapping; disturbance or injury on wildlife refuges…………………………………………………………………………3
5) The Endangered Species Act of 1973, …………………………………4
https://www.fws.gov/laws/endangered-species-act/section-11.

6) 18 U.S.C. § 1001 False Statements, Concealment………………17

7) 18 U.S.C. 1621 Perjury………………………………………………17

8) 29 CFR § 1606.8 (1) – Harassment has the purpose or effect of creating an intimidating, hostile or offensive working environment………………17

9) 33 U.S.C. §1251 et seq. (1972) Clean water act Section 404…….14, 17, 29

10) 28 U.S. Code § 4101…………………………………………………….3

11) 22–451 June 28th, 2024 Loper Bright Enterprises v. Raimondo and Relentless, Inc. v. Department of Commerce.
https://www.supremecourt.gov/opinions/23pdf/22-451_7m58.pdf

12) FRCP 3 (4)…………………………………………………………….3

13) 42 U.S.C. §7401 1970 Clean Air Act

14) Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002):  Pagtalunan was Pro Se and made numerous mistakes in filing his complaint resulting in the case being dismissed. However, upon appeal, the higher Court ruled that the lower Court was in error because they did not give allowance for Pagtalunan's lack of legal training…………………………………………3

Plaintiff also has lack of legal training and respectfully requests the same

allowance the higher court said Pagtalunan should have received.

## <u>JURISDICTION</u>

Jurisdiction

Basis for Jurisdiction

      Basis for Jurisdiction is a federal environmental question. An

Environmental disaster in the Klamath Basin has resulted from KRRC'

willful destruction of the environment in violation of known stipulations and

restrictions of the FERC license. These are in clear violation of the Federal

Clean Air and Federal Clean Water Acts of the US Congress. Also includes

violations of killing fish including endangered Salmon without permits.

Additional violations are: 18 USC 3, 16 USCA § 1532, 18 U.S. Code § 41,

Item 3 below, The Endangered Species Act of 1973, 18 U.S.C. § 1001, 18

U.S.C. 621, 18 USC 3, 29 CFR § 1606.8, 28 U.S. Code § 4101, 33 U.S.C.

§1251, 29 CFR § 1606.8, 28 U.S. Code § 4101, 18 U.S.C. 1743 and FRCP

This Court has jurisdiction, over the subject matter of this complaint,

because the illegal and unlawful actions of KRRC are violating Federal Law,

to include (Wild and Scenic Rivers Act, PL 90-542), (Clean Water Act), and

(Commerce Clause of the Constitution).  The Defendants are complicit in

these statute violations be providing KRRC with its license.  Additionally, This

Court has jurisdiction, over the subject matter of this complaint, because the

massive environmental damage in the Klamath River basin is closest to this

court. Plaintiff presents this Complaint respectfully requesting this Court to

convene this case as an article III, of the U.S. Constitution Court case, per the

recent US Supreme Court ruling in 11) 2024 Loper Bright Enterprises v.

Raimondo and Relentless, Inc. v. Department of Commerce above. Article III

Section 2 of the U. S. Constitution stipulates that "The Judicial Power shall

extend to all cases in law and equity, arising under this constitution, the laws

of the United States and Treaties, which will be made under the Authority;

- to all cases affecting ambassadors, other public Ministers and

Counsels, to controversies to which the United States shall be a party;

- to controversies between two or more states, … between citizens of

different states, between a state or the citizens thereof.

First Page, second paragraph, Held: The Administrative Procedure Act

requires courts to exercise their independent judgment in deciding whether

an agency has acted within its statutory authority, and courts may not defer

to an agency interpretation of the law simply because a statute is

ambiguous; Chevron is overruled. Pp. 7–35.

(https://www.foleyhoag.com/news-and-insights/publications/alerts-and-
updates/2024/july/chevrons-demise-and-what-it-means-for-healthcare-and-
life-sciences-companies/ )

Therefore, agencies like the Federal Energy Regulatory Commission

(FERC) are no longer permitted to cherry pick data to match their

administrative agenda.  For example, about 80% of Klamath Basin

residents were strongly opposed to the Klamath dams being removed,

which the FERC agency simply ignored.


                              VENUE

Venue is proper in this Court because the location of the Court is in

the same geographical location as the Illegal act's that are NOW taking

place.  The Court's location is close to the environmental damage incurred

and ongoing, allowing for easy visual inspection.

## STANDING

The Klamath River's rights to a wild and scenic condition is actively being violated by KRRC, the defendant's licensee, and therefore the Public (Plaintiff and Class action members) have a legal right to speak on behalf of the Klamath River. In addition, the public's right to enjoyment of that condition as mandated by Congress has forever been taken away. Therefore, Plaintiffs have standing. Additionally, this is a class action complaint with class action members residing in the Klamath Basin which extends from Klamath Falls Oregon to Yreka California.

TABLE OF CONTENTS

I. INTRODUCTION.................................................................. 7
II. BACKGROUND................................................................. 8
III. ARGUMENT.................................................................. 12
IV. CONCLUSION................................................................ 20
V. PRAYER FOR RELIEF........................................................ 26

## **INTRODUCTION**...

Plaintiff writes this Pleading reminding the Federal Court to convene this case as an article III, of the U.S. Constitution Court case, per the recent US Supreme Court ruling in 12) above. Article III, Section 2 of the US Constitution stipulates that "The Judicial Power shall extend to all

cases in law and equity, arising under this constitution, the laws of the

United States and Treaties made or which will be made under the

Authority;

- to all cases affecting ambassadors, other public Ministers and

Counsels, to controversies to which the United States shall be a party;

- to controversies between two or more states, … between citizens of

different states, between a state or the citizens thereof.

https://www.supremecourt.gov/opinions/23pdf/22-451_7m58.pdf

First Page, second paragraph, Held: The Administrative Procedure Act

requires courts to exercise their independent judgment in deciding whether

an agency has acted within its statutory authority, and courts may not defer
to an agency interpretation of the law simply because a statute is

ambiguous; Chevron is overruled. Pp. 7–35.

(https://www.foleyhoag.com/news-and-insights/publications/alerts-and-
updates/2024/july/chevrons-demise-and-what-it-means-for-healthcare-and-
life-sciences-companies/ )

Therefore, agencies like the Federal Energy Regulatory Commission

(FERC) may no longer cherry pick data to match their administrative

agenda. For example, about 80% of Klamath Basin residents didn't want

the Klamath dams removed, which the FERC agency simply ignored.

Plaintiff is asking the court to take Judicial notice of the following well

documented case facts.

## **BACKGROUND**

The 2018 FERC document (baseline document) required in item

 (e) that the Klamath River Renewal Corporation (KRRC) must perform

mitigation prior to removing any dam on the Klamath River. In addition,

Items 24 to 30 contained local resident stakeholder's testimony expressing

concern for loss of fish life and arsenic from dried silt blowing in the wind.

Plaintiff has learned from KRRCs' Legal Counsel in Case 3:24-cv-00755-

JR that KRRC did in fact inform FERC that they had performed mitigation.

However, the environmental catastrophe they created proves that they

either did not mitigate, mitigated with inadequate or inappropriate

technique, or they mitigated the wrong issues. To illustrate, imagine a

highway with three trees overhanging at about a forty-five-degree angle.

The transportation department sent out a crew to mitigate the situation.

However, the crew removed three trees on the opposite side of the

highway. Subsequently, a leaning tree falls on a car and kills four people.

This is faulty mitigation. This is essentially what KRRC has done,

destroying some 2000 fish and a herd of elk and some deer. Yet, these

upstream assaults on the environment pale in comparison to KRRC's

wanton destruction of all aquatic life from Iron Gate dam to the ocean (120

river miles (RM) on January 23, 2024.

That's the result of their gross negligence in flushing 5 million metric yards

of arsenic, chromium 6, and DDT laden silt from behind the Dams.

This is silt on both sides of the river downstream of JC Boyle dam. If

KRRC had simply dredged behind the dam and scrubbed the silt on-

site the problem would have been mitigated with minimal effort and

expense.  But due to their negligence and ignorance of scientific process,

these enormous and highly contaminated silt deposits, now extend for

hundreds of miles along the river banks. This is a violation of Clean Water

Act section 404 which only allows 1500 cubic yards of silt to be released

from any dam.

KRRC is not mitigating the contaminated silt simply by planting grass

and shrubs.  This is nothing more than an attempt to cover up the crime.

Plants obviously absorb arsenic and other poisons from the soil, which in

turn kills any animal grazing along the shore.  Unsuspecting humans are

likewise fishing and eating their catch with the same lethal outcomes

expected from previous testimony that Defendants ignored.  This is a

life-and-death situation that required emergency relief when Plaintiff

first requested it 6 weeks ago and was denied by administrative

procedure and illegal delaying tactics.  This is unconscionable.  Is

this not akin to misprision of a felony?  The court docket thus

demonstrates that case 3:24-cv-00755-JR final dismissal on 7/26/2024

must be vacated because it is based on untruthful filings of KRRC

defendants. That remedy and this Complaint are based on environmental

laws broken by KRRC defendants. Exhibit 2 is an untruthful letter sent to

Kimberly D. Bose by KRRC's untruthful legal counsel. This statement is wrong! " On July

29, 2024, the Court issued an Opinion and Order ("Order") dismissing Mr. White's case.

The Order is included here for reference as Attachment A. The Court saw Mr. White's

lawsuit for what it was: an improper collateral attack on the Surrender Order. Prior to

bringing his lawsuit against the Renewal Corporation this past spring"

Actually, it was July 26th date on the illegal dismissal. Because of KRRC's

legal counsels' untruthful filings the court illegally believed the case was

about FERC when FERC was not a defendant. FERC are pseudo scientists

and have violated the 2018 FERC document and multiple environmental

laws. Also this statement is wrong "Mr. White's filing does not comport with the

requirements of Rule 713 and does not appear to be a competent pleading of any type

allowed by Rule 202.)" Rule 713 section ii states: (ii) When the Commission presides at

the reception of the evidence;" The evidence is clear in falsified filings of KRRC.

Plaintiff uploaded a request for hearing and removal of KRRC's license in

P-14803-000.

Acceptance for Filing

---------------------

The FERC Office of the Secretary has accepted the following electronic submission for filing (Acceptance for filing does not constitute approval of any application or self-certifying notice):

-Accession No.: 202407315185
-Docket(s) No.: P-14803-000
-Filed By: Dave White
-Signed By: Dave White
-Filing Type: Request for Hearing
-Filing Desc: Dave White submits Request for Emergency Hearing re the Lower Klamath Hydroelectric Project under P-14803.
-Submission Date/Time: 7/31/2024 2:49:44 PM -Filed Date: 7/31/2024 2:49:44 PM

Your submission is now part of the record for the above Docket(s) and available in FERC's eLibrary system at:

https://elibrary.ferc.gov/eLibrary/docinfo?accession_num=20240731-5185

If you would like to receive e-mail notification when additional documents are added to the above docket(s), you can eSubscribe by docket at:

https://ferconline.ferc.gov/eSubscription.aspx


Thank you again for using the FERC Electronic Filing System.  If you need to contact us for any reason:


This complaint is to force the commissioners at FERC to cancel KRRC's

license and transfer it and KRRC's money to salmonprotectiondevice.com


**ARGUMENT**

The relatively simple task of dredging silt contained behind the 4 dams has now been spread out over the 120 RM Klamath basin below the Iron Gate Dam. Not to mention the 100+ river miles between the Iron Gate and the JC Boyle Dam upriver in Oregon. Silt on both sides of the river will need to be skimmed off, heat-treated in a decontamination, scrubbing facility, and then returned to the mountains.

Plaintiff's team includes a PhD Chemical Engineer who has a contract with ODFW, to remove these same chemicals from silt in Coos Bay.  In addition, this contractor has a lifetime of experience on major chemical engineering projects and plants all over the world. This is the same process we will use to clean up the silt in the Klamath basin.

KRRC's team doesn't know how to do any of this, and worse, didn't even recognize the necessity.  KRRC's team had five years to discover the 2011 agency-sponsored, chemistry test commissioned by Department of the Interior.  They either failed to find it or ignored it and didn't upload to the FERC docket like Plaintiff.

We are dealing with pseudo-scientists (KRRC) who have no appreciation of the scientific method.  The first step in the scientific method is thorough literature search to include existing reports of previous quantitative testing and surveys as well as qualitative reports such as public hearings or focus

groups.

1. Screening-Level-Evaluation-of-Contaminants-in-Sediments.pdf
   See chapter 3. Arsenic, Chromium 6, and DDT in the sediment

   behind the dams. 2011 Report of extremely dangerous arsenic,

   Chromium 6, and DDT contamination in the Klamath River System

   silt. Also, fish tested have the same chemicals.

   The information below is from the 2009-2011 chemistry test of silt

   behind the Klamath River dams, commissioned by the Department of

   the Interior.  This previously inert silt behind the dams has now been

   deposited on downstream riverbanks, thanks to KRRC's scientific

   ineptitude. All the riverbanks are now contaminated with ultra-high

   levels of arsenic, chromium 6 and carcinogens in the silt. No human

   being should go near the river without a gas mask and the original

   mitigation requirement of fencing must now be installed over twice as

   much River mileage (RM) to prevent further destruction of wildlife.

   This is a small price to pay for the KRRC's penchant for cutting

   corners to get the job done quickly with no regard for the Federal law.

   Chapter three Table 3.

   Chemicals in 2009-2010 Klamath Reservoir Sediment that Exceed One
   or More Human Health Sediment Screening Levels.

Copco 1 Reservoir
Arsenic concentration is 6.3 to 13 times concentration of 1 safe limits of
EPA RSL TOT CAR, CHHSL Res, CHHSL Comm.
BIS(2-CHLOROETHYL) ETHER, a carcinogen is at the limits of EPA
RSL.

J.C. Boyle Reservoir
Arsenic 38 to 214 times concentration of safe limits of EPA RSL TOT
CAR,
CHHSL Res, CHHSL, Comm.
4,4-DDT 12 to103 times concentration of safe limits of ODEQ BSLV H-
S,
ODEQ BSLV H-G.

Iron Gate Reservoir
Arsenic 26 to 143 times safe concentration, exceeded all screening
levels high concentration. EPA RSL TOT CAR, CHHSL, Res, CHHSL,
Comm
BIS(2-CHLOROETHYL) ETHER, a carcinogen is at the limits of EPA
RSL.

Lower Klamath
Chromium at limit of SL1-FWS, SL2-FWS, FWS TEL, FWS LEL, FWS
PEL,
FWS TEC.

Upper Klamath
Chromium at limit of SL1-FWS, FWS TEL, FWS LEL, FWS PEL, FWS
TEC.

Lower Klamath Estuary
Arsenic is 8.2 to 46 times in concentration exceeding all screening
levels
EPA, RSL, TOT, CAR, CHHSL, Res, CHHSL, Comm.

Upper Klamath Estuary
Arsenic is 5.6 to 31 times safe concentration exceeding all screening
levels

EPA, RSL TOT CAR, CHHSL Res, CHHSL, Comm.

BIS(2-CHLOROETHYL) ETHER, a carcinogen is at the safe limits of EPA

RSL

Signs should be posted in English and Spanish "**Danger!**  Don't come

any closer to the river without a gas mask!". The silt is contaminated

with deadly concentrations of arsenic, chromium 6 and DDT. See

Salmonprotectiondevice.com Klamath page.

The urgency of this injunction is underscored by reports of the threat

to humans and wildlife now emerging from the Klamath basin above

and below the Iron Gate Dam.  One resident has preserved a dead

beaver in cold storage and we are moving to autopsy as soon as

possible with chain of custody confirmed.

We are also getting reports of unsuspecting fisherman returning to

the river to catch unsuspecting salmon entering from the Pacific.

They are completely oblivious to the deadly threat, which cannot be

detected by sight or smell.

As noted above, the concentrations of lethal chemicals are levels of

magnitude above government sanctioned safety limits. The picture

below is but one more illustration of KRRC's ineptitude and failure to

understand or comply with mitigation requirements. They assume that

simply planting grass and restoring native herbs and shrubs is

adequate for the task. No thought has been given to the lethal effect

this is having on wildlife grazing on the riverbanks. In reality, we are

looking at a likely EPA Super-Fund site of mammoth proportions.

Once again, we alerted EPA to the damage a few weeks ago, and

they have begun their investigation.

KRRC ignored all of this and frankly admitted in the OPB press
conference that they were just learning as they go along.  OPB article

of press conference where KRRC admitted killing 2000 fish including

endangered salmon.

https://www.opb.org/article/2024/02/18/klamath-reservoir-
drawdown-water-quality-discussion/

"It was always expected that these species would not persist," said

Dave Coffman, geoscientist for Resource Environmental Solutions, or

RES, during the press conference." RES is KRRC subcontractor.

Read the whole article please!

The entire decision to vandalize and destroy this incredibly valuable |

public property was based entirely on ill-informed, and unscientific
complaints of upstream residents.  They proceeded, with no regard

16

whatsoever for the water-rights of downstream users, and the far less

draconian remedies that would have respected the environmental

rights of everybody involved, upstream and downstream, in

accordance with the 7 environmental values of the Wild and Scenic

Rivers Act.

 Had Plaintiff's original request for a "stop work" injunction (ECF5),

(3:24-cv-00755-JR) been honored back on May 5th, the two major

dams could have been salvaged from mindless destruction and at

least some of this damage would have been avoided.

This fiasco stands as a testimony of compliance with half-baked,

emotion charged, "radical environmentalist" ideology, while

completely ignoring sound principles of environmental science.

    a. Plaintiff has explained in detail KRRC's failure to mitigate.  This

       failure led to deception of FERC and the Army Corps of

       Engineers by filing false reports like a sham Chemistry test that

       contradicts all other evidence, notably the Department of

       Interior testing of lethal contamination between 2009 to 2011.

       Instead of two years, KRRC's apparently threw their' s

       (chemistry test) together slipshod in the period of a few days or

17

so.

This is exacerbated by their deception of FERC and the Army

Corps of Engineers in filings claiming they dredged behind the

dams. Exhibit 1 is a letter from CAMAS to the Army Corp about the

project containing KRRC's false claims.  As an example: Page 2

lines 35 to 37 says: "While the Clean Water Act Section 404 permit

application (SPN-2003-279850) includes a maximum of 1,500
cubic yards of sediment relocation, the actual amount of dredged

sediment is expected to be much smaller."

However, KRRC released 5 million metric yards of silt from

the IRON gate dam in January, 23, 2024 all at one time. This is

hardly a minor oversight or miscalculation.  This is a clear and

colossal violation of Section 404 permit application (SPN-2003-

279850) and the Federal Clean Water Act Section 404!

The Siskiyou News reported, that "There is no debate that the

release of about 5-million metric yards of sediment from Iron

Gate Dam on January 23, 2024, killed virtually all aquatic

lifeforms in the Klamath River all the way to the coast."

https://www.siskiyou.news/2024/03/09/anyone-remember-the-

1964-klamath-river-flood/

Images below were taken in May 2024 of the environmental

destruction and contaminated silt on both sides of the river



This is the silt on both sides of the river downstream of JC Boyle dam. If

KRRC had dredged behind the dam, then these enormous and highly

contaminated silt deposits, extending for miles along the river banks, would

not exist. KRRC is not mitigating the contaminated silt simply by

planting grass and shrubs.  Plants obviously absorb arsenic and other

poisons from the soil, which in turn kills any animal grazing along the

shore.



Here is a photo taken Wednesday, May 29th, 2024 upstream of JC Boyle

dam, exposing a complete mess behind the dam with no mitigation of

anything. Upstream dam silt is present in the image.

KRRC's so-called chemistry test violated every testing protocol.

For example, Defendants' conveniently left out required details about how

the samples were acquired, i.e. at the tributaries with pristine water. This

exposes further ignorance of the scientific method on the part of KRRC;

i.e., provision for repeatability of results.  These deceptive documents were

uploaded to FERC and Army Corps of Engineers. Plaintiff through a

Freedom of Information Act request received these Corps filings of KRRC.

This is 18 U.S.C. § 1001 False Statements, Concealment, 18 U.S.C. 1621

Perjury and 29 CFR § 1606.8 (1).

**CONCLUSION**

KRRC killed 2000 fish including endangered Salmon and a herd of

elk without permits. KRRC also released 5 million metric yards of silt

from the Iron Gate Dam on January 23rd, 2024 which killed all aquatic life to

the coast. 120 river miles are devastated. This is a clear violation of the

clean water act section 404.  KRRC knew full well (Exhibit 1 in February 17,

2022) that they were not permitted to release more than 1500 cubic yards

of silt from any of the dams. Their failure to comply has left silt deposits on

both sides of the Klamath River contaminated with extremely high

concentrations of arsenic and chromium VI.

This is far more than the amount permitted by the release of 1500 cubic

yards from each of the 4 dams. Many animals have perished because of

this malfeasance.  There are reports of additional elk struggling in what

essentially amounted to an avalanche of quicksand, with local residents

heroic efforts to rescue them in vain.

KRRC has broken many environmental laws which transfer to the FERC

commission members by 18 USC 3 accessory after the fact.

More importantly, standing is inherent or built-in by the class action nature

of this case and by KRRCS violations of Federal Environmental law

and the seven values articulated therein, reserved for every citizen of the

United States. Also, class action members, residing a mere few miles from

the Iron Gate dam have legal standing on the basis of direct harm inflicted.

Their life and property are now at risk by the return of surge flood waters

that were endemic prior to installation of the dams.  Google "images for

Klamath flooding in the 1960s":

https://duckduckgo.com/?q=klamath+flooding+in+the+1960s&atb=v331-

1&t=chromentp&iax=images&ia=images

When the federal prosecutors learned of this case they directed the FBI to

investigate 4 Federal environmental laws confirmed broken, including

confession in a Press Conference to killing 2,000 fish and a herd of elk

without permits, as reported in an OPB article.

Oregon.  It's very easy to see we must discourage the purchase of EV's as soon

as possible.  In light of our looming power crisis removal of this vital source of

clean, renewable energy can only aggravate the problem.  Removal of the Iron

Gate dam is insanity.

The table below, along with other critical information, was presented by a grid

expert at an October 18, 2023 Cascade Policy Institute Conference. Note that for

this Winter, 2024-2025 the Northwest electric grid is projected to fall 927

megawatts short of demand.  It is projected to be almost nine as bad in 10 years.

The grid expert said they are talking about activating virtual generators at homes

to help make up the difference when needed. For example, a virtual generator is

equipped to switch the smart meter on a home which is charging an electrical

vehicle at night and drain the Ev battery charge back into the grid.

# Northwest Region Requirements and Resources

**Table 1. Northwest Region Requirements and Resources – Annual Energy** shows the sum
of the individual utilities' requirements and firm resources for each of the next 10 years.  Expected firm
load and exports make up the total firm regional requirements.

| Average Megawatts | 2023-24 | 2024-25 | 2025-26 | 2026-27 | 2027-28 | 2028-29 | 2029-30 | 2030-31 | 2031-32 | 2032-33 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Firm Requirements** | | | | | | | | | | |
| Load [1] | 21,814 | 22,791 | 23,694 | 24,558 | 25,545 | 26,225 | 26,485 | 26,681 | 26,841 | 27,006 |
| Exports | 520 | 502 | 502 | 501 | 501 | 501 | 501 | 501 | 501 | 501 |
| Total | 22,334 | 23,293 | 24,195 | 25,060 | 26,046 | 26,726 | 26,986 | 27,182 | 27,342 | 27,507 |
| **Firm Resources** | | | | | | | | | | |
| Hydro [2] | 11,459 | 11,439 | 11,424 | 11,462 | 11,424 | 11,402 | 11,200 | 11,200 | 11,161 | 11,005 |
| Small Thermal/Misc. | 28 | 28 | 28 | 28 | 28 | 18 | 11 | 11 | 11 | 11 |
| Natural Gas [3] | 4,107 | 4,497 | 4,801 | 4,551 | 4,546 | 4,544 | 4,474 | 4,426 | 4,225 | 4,222 |
| Renewables-Other | 276 | 275 | 273 | 274 | 269 | 268 | 268 | 266 | 264 | 260 |
| Solar | 503 | 503 | 503 | 502 | 502 | 501 | 501 | 500 | 498 | 483 |
| Wind | 1,757 | 1,747 | 1,747 | 1,721 | 1,661 | 1,823 | 1,611 | 1,596 | 1,596 | 1,622 |
| Cogeneration | 41 | 41 | 34 | 32 | 31 | 31 | 31 | 31 | 31 | 31 |
| Imports | 488 | 488 | 467 | 467 | 453 | 380 | 324 | 310 | 310 | 222 |
| Nuclear | 1,116 | 994 | 1,116 | 994 | 1,116 | 994 | 1,116 | 994 | 1,116 | 994 |
| Coal | 2,583 | 2,356 | 1,593 | 1,065 | 1,068 | 891 | 593 | 479 | 497 | 508 |
| Total | 22,357 | 22,366 | 21,985 | 21,096 | 21,097 | 20,652 | 20,127 | 19,810 | 19,708 | 19,357 |
| **Surplus (Deficit)** | **22** | **(927)** | **(2,210)** | **(3,963)** | **(4,949)** | **(6,074)** | **(6,850)** | **(7,372)** | **(7,634)** | **(8,150)** |

[1] Load net of energy efficiency
[2] Firm hydro for energy is the generation expected assuming critical (8%) water condition (the methodology is changed for the 2023 report)
[3] More energy may be available from natural gas power plants

Also, anything that is done to reduce emissions of carbon dioxide

takes 150 years to have an effect due to the phenomenon of residence

time.   Believe it or not, It takes that long for existing Carbon Dioxide

to dissipate, so Electric Vehicles have zero effect on any imagined ill-

effects of current CO2 levels.

**https://cctruth.org/residence_time.pdf**

Atmospheric Carbon Dioxide residence time

In a 2003 IPCC report, The Intergovernmental Panel on Climate Change

gave a range of 5 years to 200 years for residence time, which can be a

range of time. However, most Chemical Engineers use average residence

time. That is what we are interested in. We need to know on average how

long it takes a molecule to be consumed by photosynthesis, diffused to the

exosphere, or captured by oceans. This time is at least 150 years. The full

manuscript can be accessed at:
https://agupubs.onlinelibrary.wiley.com/doi/full/10.1002/2017JD028121

This is more than 160 PhD in 19 published manuscripts summarized in

one published manuscript.

| Residence Time (Years) | Author | Year |
|---|---|---|
| 700 | Allen | 2009 |
| 610 | Zickfeld | 2013 |
| 500 | Matthews | 2008 |

| 300 | Plattner | 2008 |
|---|---|---|
| 270 | Cao | 2010 |
| 230 | Zickfeld | 2012 |
| 220 | Solomon | 2012 |
| 220 | Knutti | 2012 |
| 210 | Gillett | 2011 |
| 180 | Frolicher | 2010 |
| 150 | Hare | 2006 |

**Even at a residence time of 100 years, atmospheric $CO_2$ never lowers because of working on emissions. Constraints for this chart.**

**45% reduction in fossil fuel $CO_2$ emissions by 2030**

**55% reduction in fossil fuel $CO_2$ emissions by 2130 due to depletion of those fuels. 2030 45% reduction in the rate of rise of Atmospheric $CO2$.**

**2130 45% reduction in $CO_2$ concentration**

**2230 55% reduction in $CO_2$ concentration and rate.**



Another way to look at residence time is a signature from past events,

which lowered CO2 emissions. As an example oil embargo in the 1970's,

multiple recessions and the big worldwide recession in 2009. The current

1

2  COVID-19 pandemic. These are examples of lowered worldwide

3

4  emissions. Below is the current graph of Mauna Loa CO2. You can

5

6  clearly see no signature from these events.

7

8

9



10
11  Why is the residence time increasing? Because of massive worldwide non-sustainable deforestation.
12  http://Globalforestwatch.org/map
13
14  A selection of manuscripts: Northern Hemisphere forests are not consuming nearly as much carbon dioxide
15
16  as most climate change scientists claim. (Northern Hemisphere (NH) forests consume 2.6 gtyr-1 (2.6 billion
17
18  tons per year) of carbon dioxide. We have 36 gtyr-1 (36 billion tons per year) in CO2 emissions. This is not
19
20  what lowers Mauna Loa in the NH summer with more economic activity and more CO2 emissions.
21
22  http://www.eeb.cornell.edu/goodale/2002%20GoodaleEcolAppl.pdf
23  All tropical forests in the Southern Hemisphere have switched to become oxygen consumers and carbon
24
25  dioxide producers due to organic decay. (https://science.sciencemag.org/content/358/6360/230/tab-pdf
26

However, atmospheric carbon dioxide lowers quickly with increasing photosynthesis. Plant native trees!



But guess what does reduce atmospheric CO2?  It's called

photosynthesis and thanks to massive reforestation efforts in China,

India and Pakistan, it's already solved the problem in the Northern

hemisphere.  Only fraudulent measurement techniques at NOAH have

concealed this, but we at the official IPCC watchdog team have

recently forced the firing of the fraud perpetrators.

## **PRAYER FOR RELIEF**

1. Plaintiff hereby respectfully requests the court to issue a Writ of

   Mandamus that Defendants charge Plaintiff's team with the task of

   restoring the Klamath river back to its Original Wild and Scenic

   condition with dams with fish ladders as mandated by Congress, and

2.

   grant Injunctive Relief to halt all further deconstruction.  and Summary

   Judgement because Defendants licensee KRRC continues to ignore

what they are legally required to do by FERC and Army Corp of

Engineers, and the federal Clean Water Act, Section 404.  KRRC has made public confession of these crimes and have nonetheless proceeded with their nefarious,

criminal activity. The gravity of this case requires a court order that

commands a government official or entity to perform an act it is

legally required to perform as part of its official duties, or refrain from

performing an act the law forbids.

3. Plaintiff hereby respectfully requests the court to order Defendants to

immediately remove KRRC license and transfer all remaining control

and money to Salmon Protection Device non-profit.

Salmonprotectiondevice.com has engineers and scientists who know

how to mitigate the contaminated silt and install fish ladders on Iron

Gate and JC Boyle Dams.

4. Plaintiff respectfully requests the federal court to vacate the 3:24-cv-

00755-JR final dismissal on 7/26/2024.  This Federal Court dismissal

was based on KRRC's legal counsel untruthful ECF's and wrong use

of case law and federal law. Plaintiff already warned them if they do

this again he will ask for full adjudication to the FBI to be prosecuted

to the full extent of the law.

5. Plaintiff respectfully requests the federal court to acknowledge standing

   based on Federal Environmental laws broken with associated 7 Values
   denied to Plaintiff , class action members and Plaintiff's actions  taken

   to move out of state to California due to harms

   inflicted by

   KRRC' malfeasance.

6. Plaintiff hereby respectfully requests the court to provide relief with a

   and take judicial notice of KRRC's lethal environmental consequences

   which must stop. Rule Salmon Protection Device remediation team to

   the task of project mitigation immediately, to avoid more lethal

   environmental consequences of KRRC's gross negligence.  This is

   much worse than the Exxon-Valdez oil spill because KRRC's actions

   devastated all aquatic life west of the Iron Gate Dam and destroyed vital

   estuaries.  EPA has been notified and is likely to declare this a Super-

   Fund Cleanup site.

This designation needs to specify that no person shall go near the

Klamath River without wearing a gas mask until the salmon protection

device team removes and scrubs the contaminated silt on the

riverbanks. Every day that goes by without an injunction is a threat to the

lives of local residents and wildlife.  This amounts to failure to impede a

crime in process.  How is this not akin to "Misprision of a Felony?"

The active agent in the crime must provide funds for replacement of the

J.C. Boyle and Iron Gate Dams.  The Kiewit corporation knowingly

participated as accomplice in commission of this unconscionable crime

against the environment in spite of warnings.  They proceeded with full

knowledge and warning of the environmental laws that they were

violating with impunity.  This too-big-to-fail attitude must not go

unrequited.

Plaintiff requests a writ of mandamus and a Summary Judgment in

Plaintiff's favor because Defendants are clearly biased on Federal

Environmental law not doing what they are legally required to do.

Plaintiff respectfully requests the federal court to provide any cost to

the Plaintiff as the court sees fit .

Yes, Plaintiffs home is for sale. 18965 NW Illahe St, Portland, OR 97229 |
Zillow.

With a proper ruling by FERC or the Federal court, Plaintiff will

move back to the Klamath basin in California and rectify the environmental

mess left by KRRC.

Plaintiff was 11 Bravo in the Army and Vietnam who knows firsthand what a

war zone looks like. The devastation in the Klamath basin is akin to a war

zone.

## Service

Fed. R. Civ. P. 4(e)". says (e)(1) "following state law for serving

a summons in an action brought in courts of general jurisdiction in the state

where the district court is located or where service is made; However, by

Oregon law email service is allowed. UTCR 8 21.10 (2) explains a

document may be a pleading or many other documents.

Rule 4M states plaintiffs can serve the summons up to 90 days' after

the complaint is filed.

**CERTIFICATE OF SERVICE**
I hereby certify that on August 8th, 2024, a true and correct copy of the above
document was electronically filed with the Clerk of the Court using CM/ECF.
A copy of the document will be served upon interested parties via the Notices
of Electronic Filing that are generated by CM/ECF. Additionally, a courtesy
copy is being provided as follows:

**Attorney** for Legal Counsel for all defendants
Danielle Mechling
Attorney-Advisor
Federal Energy Regulatory Commission
Office of Enforcement, Division of Investigations
Tel: 202-502-8924
Email: danielle.mechling@ferc.gov

31

1   ___ Via hand delivery
2   ___ Via U.S. Mail, 1st Class,
3   Postage Prepaid
4   ___ Via Overnight Delivery
5   ___ Via Facsimile
6   XX Via Email
7   XX Via CM/ECF notification
8   to the extent registered DATED: August 8th, 2024.
9   By: David White
10

11
12  David C. White Pro Se. August 8th, 2024
13

14  **Exhibit 1**

15  ◯ CAMAS
16
17
18
19  Environmental Regulatory Professionals
20
21

Camas, LLC
680 G Street, Suite C
Jacksonville, OR 97530
P 458.229.8392
www.camasllc.com

22  February 17, 2022                                          SPN: 2003-279850
23
24  L. Kasey Sirkin
25  Lead Biologist, Eureka Field Office
26  U.S. Army Corps of Engineers
27  601 Startare Drive, #13
28  Eureka, CA 95501
29
30  **RE:   Lower Klamath Dam Removal: Relocation of Sediments within Copco No. 1 and Iron Gate**
31          **Reservoirs**
32

33
34  Dear Ms. Sirkin,

35  On May 3, 2019, the Klamath River Renewal Corporation's (Renewal Corporation) submitted the USACE
36  Section 404 Application for the removal of four dams known as the Lower Klamath Project FERC No.
37  14803, USACE SPN-2003-279850. The Renewal Corporation then submitted two application updates,
38  August 4, 2020, and September 30, 2021. The updates provided additional information representing the
39  progression of design from 60% to 100%. The application updates included the activity for the removal of
40  a limited amount of accumulated sediment in front of mechanical equipment from the upstream side of
41  Copco No. 1 and Iron Gate dams to achieve operation of the equipment as part of dam removal. On January

1   20, 2022, we hosted a site visit to discuss dam removal activities that will occur in the "pre-drawdown
2   year," in which you attended, as well as William Conner and Tori White. During the visit, it was determined
3   that additional information is recommended regarding the relocation of the accumulated sediment material
4   into the Waters of the United States as the best and most reasonable option. This letter provides the
5   additional information requested.

6   The dam removal process involves drawing the reservoir water levels down prior to commencing dam
7   removal activities. Reservoir drawdown procedures at each facility differ based on dam configuration and
8   existing conditions within each reservoir and adjacent areas. The drawdown operations at Copco No. 1 and
9   Iron Gate dams require removal of reservoir sediment immediately in front of mechanical equipment prior
10  to the beginning of drawdown. The removal will clear the openings of the new low-level outlet at Copco
11  No. 1 and historic diversion tunnels at both Copco No. 1 and Iron Gate. Specific operations at each facility
12  and rationale for retaining the accumulated sediments within Waters of the United States are described in
13  the following paragraphs.

14  **COPCO NO. 1**

15  Copco No. 1 reservoir drawdown will be achieved by boring a low-level outlet tunnel through the center of
16  the concrete dam from the downstream side during the pre-drawdown year, and then opening the low-level
17  outlet to drain the reservoir. Once the reservoir is drawn down to the elevation of the historic cofferdam,
18  the historic diversion tunnel will be opened to allow the reservoir to drain completely. The Renewal
19  Corporation plans to remove approximately 15,000 cubic yards of accumulated sediment and debris fro
20  the upstream end of the low-level outlet and historic diversion tunnel before opening them. Removing the
21  sediment and debris will facilitate the safe passage of river flows and sediment during drawdown and during
22  dam demolition and removal. The sediment removal will be conducted from a floating barge using a
23  clamshell dredge, and the sediments will be relocated to an open water site within Copco No. 1 reservoir.

24  The Renewal Corporation conducted multiple design workshops as well technical meetings to establish the
25  use of the low-level outlet and historic diversion tunnel as the best approach for achieving drawdown in a
26  safe and efficient manner. As part of these meetings, the open water deposition site was determined to be
27  the best option for relocation of the dredged sediments for these reasons:

28  1. The Proposed Action is intended to discharge the majority of accumulated reservoir sediment
29     downstream. The sediment material directly in front of gates and tunnels will be the first sediment
30     released. The placement of the dredged material from the gate and tunnel to the upstream
31     location in the reservoir aligns with the intention of the Proposed Action. The newly placed
32     dredged sediment will be suspended during drawdown and released. Placement in this upstream
33     location will only delay the timing in which it will be released.

34  2. The upstream deposition site is on a submerged shelf that will become an upland area after dam
35     removal. Any dredged sediment remaining after dam removal will be in an upland site outside of
36     Waters of the United States. The reservoir upland areas will become property of the State of
37     California after dam removal. The State of California is a co-licensee as part of the FERC process.

38  3. The open water deposition site location was selected to be far enough away from the dam and is
39     in a shallow area, to limit any material transporting back to the dam site prior to drawdown,
40     causing an impediment to the low-level outlet.

41  4. The reservoir inundated area is within the FERC Project Boundary, and therefore within the control

33

1  of the Renewal Corporation.  The majority of the upland property surrounding Copco No. 1
2  reservoir is privately owned and therefore suitable upland locations are not accessible.

3  5. The dredging needs to be completed just before the opening of the low-level outlet, to remove
4  the risk of natural flow processes depositing sediment back in front of the outlet.  The open water
5  deposition site allows for expedience in moving the material.

6  **IRON GATE**
7  The Iron Gate reservoir drawdown will be achieved by opening the gates of the historic diversion tunnel.
8  In the pre-drawdown year, additional inspections of the diversion tunnel approach channel may reveal
9  accumulated sediment. If the Renewal Corporation determines that accumulated sediment could cause an
10  obstruction to the diversion tunnel, divers will clear the sediment from the diversion tunnel approach
11  channel and side-cast the material within Iron Gate reservoir. While the Clean Water Act Section 404
12  permit application (SPN-2003-279850) includes a maximum of 1,500 cubic yards of sediment relocation,
13  the actual amount of dredged sediment is expected to be much smaller. Underwater video surveys and
14  sonar bathymetric surveys have shown very little sediment accumulation in the diversion tunnel approach
15  channel. This work activity was included in the permit application in case unexpected sediment has
16  accumulated in the time since the most recent surveys were completed in late August 2020. The river based
17  method of removing small quantities of sediment is the least impactful and most time efficient method
18  available. In-water relocation of the dredged sediment is appropriate as the sediment will be evacuated
19  from the reservoir area during drawdown, which is consistent with the goals of the Proposed Action.
20
21

1
2    If you require any further information or documentation, please direct any such request to my attention
3    at the contact details identified below.  Thank you.
4

5
6    Sincerely,
7

8    _____
9    Matt Robart, Project Scientist
10   Camas, LLC
11   matt@camasllc.com
12

13
14   cc:    William Connor, North Branch Chief, Regulatory Division, U.S. Army Corps of
15          Engineers Mark Bransom, Chief Executive Officer, Klamath River Renewal
16          Corporation
17
18   Exhibit 2 untruthful letter sent by KRRC's legal counsel to Kimberly D. Bose.
19


20   **PERKINSCOIE**          10885 NE Fourth Street      ● +1 425.635.1400
                              Suite 700                   ● +1 425.635.7400
                              Bellevue, WA 98004-5579      PerkinsCoie.com

21   August 5, 2024

22   VIA ELECTRONIC FILING

23   Kimberly D. Bose

24   Secretary, Federal Energy Regulatory

25   Commission

26   888 First Street, N.E.

27   Washington, D.C. 20426

28   Re: David White's Filing in Docket P-14803-000 ("Plaintiffs Request for

29   Emergency Hearing on Docket"), FERC No. 14803-000.

1  Dear Secretary Bose:

2  This letter addresses the filing by an individual, David White, posted July
3  31,2024, purporting to request an "emergency hearing on docket" and
4  seeking "FERC' immediate action to rescind KRRC's permit to remove the
5  Klamath River dams and restore the two dams they are destroying to their
6  previous condition with a trench to install a fish ladder."1 Mr. White's
7  improper collateral attack on the Commission's November 17, 2022 license
8  surrender order ("Surrender Order") was recently rejected by the U.S.
9  District Court for the District of Oregon. Long after the deadline for
10  rehearing has passed, Mr White, an individual that was not a party to the
11  license surrender proceeding in question, now asks FERC to entertain his
12  untimely appeal. Mr. White's request for an emergency hearing should be
13  rejected and his "request for rehearing" should be denied.

14  For context, the Klamath River Renewal Corporation ("Renewal
15  Corporation"), together with its co-defendants Mark Bransom and Dave
16  Coffman (together, "Defendants"), has for several months been engaged in
17  litigation to dismiss a lawsuit by Mr. White brought in the U.S. District Court
18  for the District of Oregon.5 In May 2024, Dave White submits Request for
19  Emergency Hearing re the Lower Klamath Hydroelectric Project under P-

20  14803. (July 31, 2024), FERC Accession no. 20240731-5185.

21  Order Modifying and Approving Surrender of License and Removal of
22  Project Facilities, 181 FERC ¶

23  61,122 (November 17, 2022).

24  3 Opinion and Order (July 26, 2024), White v. Klamath River Renewal
25  Corporation et. al., Case 3:24-cv-

26  00755-JR (D.OR.).

27  Mr. White's filing does not comport with the requirements of Rule 713 and
28  does not appear to be a competent pleading of any type allowed by Rule
29  202. The Renewal Corporation does not concede that Mr. White's

30  filing is sufficient to evoke the jurisdiction of the Commission for its stated
31  purposes. Moreover, Mr. White's

32  factual allegations lack the support of evidence and are without merit.

1  5 Complaint, ECF 1 (May 3, 2024), White v. Klamath River Renewal
2  Corporation et. al., Case 3:24-cv-

3  00755-JR (D.OR.)

4  Kimberly D. Bose

5  August 5, 2024

6  Page 2

7  Mr. White filed a complaint to enjoin the decommissioning of the Lower
8  Klamath Project—a year and a half after the Commission issued its
9  Surrender Order and the Renewal Corporation initiated decommissioning
10  pursuant to that order. Mr. White also filed a motion for preliminary
11  injunction and various other "emergency" motions requesting, among other
12  things, to declare the "FERC document null and void," impose criminal
13  penalties on Defendants, and require the reversal or at least major changes
14  to decommissioning, all of which the Court denied.

15  On July 29, 2024, the Court issued an Opinion and Order ("Order")
16  dismissing Mr. White's case. The Order is included here for reference as
17  Attachment A.

18  The Court saw Mr. White's lawsuit for what it was: an improper collateral
19  attack on the Surrender Order. Prior to bringing his lawsuit against the
20  Renewal Corporation this past spring, Mr. White had no history of
21  participation in Docket P-14803-000 or its sub-dockets, and to our
22  knowledge never sought to intervene in the Commission's proceedings
23  regarding license surrender and decommissioning of the Lower Klamath

24  Project. With his filing, Mr. White seeks to bring his impermissible attack on
25  the Surrender Order to the Commission, and where that attack failed before
26  the Court, it must also fail here. Plaintiff never sought rehearing of the
27  Surrender Order—no party did, for that matter—and the deadline to do so
28  is long past.

29  This latest effort to revive the lawsuit is frivolous. Dam removal is nearly
30  done. It is also vexatious. Before the Court, Mr. White filed a motion or
31  other pleading every three days on average, ignoring procedural orders. He
32  used these highly repetitive pleadings to attack the ethics and competency

1  of the Renewal Corporation and our contractors, the Court, and the
2  Commission alike. The prospect is more of the same here.

3  For the reasons stated above, the Commission should deny Mr. White's
4  untimely appeal and request for an emergency hearing. The Renewal
5  Corporation respectfully

6  seeks Commission Staff's input whether Mr. White's filing merits further
7  response. Should Commission Staff require any further information, please
8  direct any such requests to counsel as identified below.

9  Even assuming Mr. White had been granted intervenor status, the deadline
10  to seek rehearing was thirty days after the Commission's issuance of the
11  Surrender Order, or December 17, 2022. 18 C.F.R. § 385.713(b).

12  Kimberly D. Bose

13  August 5, 2024

14  Page 3

15  Respectfully submitted,

16  s/ Markham A. Quehrn

17  Markham A. Quehrn

18  Perkins Coie LLP

19  Attorneys for Klamath River Renewal Corporation

20  Richard Roos-Collins

21  General Counsel, Klamath River Renewal Corporation
22